**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA** NIGHT BOX
FILED

DCT ~ 1 2004

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

IN THE MATTER OF THE ARBITRATION
BETWEEN:

FOUR SEASONS HOTELS AND
RESORTS B.V.; FOUR SEASONS
HOTELS LIMITED; and FOUR
SEASONS CARACAS, C.A.,

     Petitioners,     Case No. 04-20673-CIV-MOORE

v.

CONSORCIO BARR, S.A.,

     Respondent.

_____/

## PETITIONERS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR JUDGMENT ON THE PLEADINGS AND INCORPORATED MEMORANDA OF LAW

   Petitioners, Four Seasons Hotels and Resorts, B.V., Four Seasons Hotels Limited and

Four Seasons Caracas, C.A, (collectively referred to as "Four Seasons"), by and through their

undersigned attorneys, pursuant to Fed.R.Civ.Pro. 12(c) and 56, and S.D.Fla.L.R. 7.5, move this

Court for final summary judgment confirming and enforcing the final arbitral award entered

March 22, 2004. (D.E. 1). There is no issue of material fact and Plaintiffs are entitled to final

judgment in their favor as a matter of law. The particular grounds and substantial matters of law

to be argued follow below.



## STATEMENT OF UNDISPUTED MATERIAL FACTS

On April 9, 1997, Four Seasons and Consorcio Barr, S.A. ("Consorcio"), entered into a series of five (5) agreements regarding the management and operation of the Four Seasons Hotel Caracas ("Hotel"). Four of these agreements called for arbitration as the mandatory dispute resolution procedure. On November 30, 2001, in accordance with the provisions of four of those agreements (the "Hotel Agreements"), Four Seasons initiated an arbitration proceeding in Miami, Florida, before the American Arbitration Association alleging multiple breaches by Consorcio. The four agreements at issue in the arbitral proceeding are: (1) Hotel Management Agreement ("Management Agreement") *See* Exhibit "A" to Composite Exhibit 1 in Enforcement Motion ; (2) Hotel Advisory Agreement ("Advisory Agreement") *See* Exhibit "B" to Composite Exhibit 1 in Enforcement Motion ; (3) Hotel Services Agreement ("Services Agreement") *See* Exhibit "C" to Composite Exhibit 1 in Enforcement Motion ; and (4) Hotel Pre-Opening Services Agreement ("Pre-Opening Agreement") *See* Exhibit "D" to Composite 1 in Enforcement Motion . Each of these agreements expressly states that "any dispute ___**shall**___ be settled by arbitration." *See* HMA § 19.03, , Ex. "A" to Comp. 1 in Enforcement Motion (D.E. 1); HAA §17.03, Ex. "B" to Comp. 1; HAS §10.03, Ex. "C" to Comp. 1; and HPOSA §17.03, Ex. "D" to Comp. 1 (emphasis supplied). The Hotel Agreements also explicitly provide that the arbitration "shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association." *Id.*

After filing the demand for arbitration with the AAA, the AAA assigned the arbitral proceeding to the International Centre for Dispute Resolution ("ICDR"), and through its December 7, 2001 letter to the parties, the ICDR set out the procedures to be followed in this

arbitration, referring to the 2000 AAA's Commercial Dispute Resolution Procedures ("2000 Rules"). *See* App. 1. The AAA also sent the parties a copy of these Rules and of the Supplementary Procedures applicable to international arbitrations. Neither party objected to the use of the 2000 Rules either upon receipt of the December 7, 2001 letter or at any point within the ten (10) day period provided to the parties for the purpose of raising any objections to the application of these rules. *See* December 7, 2001 letter from AAA to the parties (App. 1).

In accordance with the terms of the Hotel Agreements, Four Seasons named its first arbitrator, Professor Michael Gordon ("Gordon"). Consorcio, invoking the 2000 Rules, then sought the disqualification of Professor Gordon. *See* December 13, 2001 Letter from Daniel E. Gonzalez to AAA (App. 2). In opposition to Professor Gordon's disqualification, Four Seasons argued that under the 1997 AAA's Commercial Dispute Resolution Procedures ("1997 Rules"), a party-appointed arbitrator could not be disqualified. *See* December 21, 2001 Letter to AAA, attached as App. 3, and February 8 2002 Letter to AAA, attached as App. 4, citing to Rule 12(b) of the 1997 Rules. However, the AAA, applying the 2000 Rules invoked by Consorcio, and based on the lack of timely objection of either party to the application of the 2000 Rules or the Supplementary Procedures for International Commercial Arbitration, sustained the disqualification of Professor Gordon. *See* February 22, 2002 Letter Ruling issued by ICDR, App. 5. Because of Gordon's disqualification, Four Seasons named a Venezuelan attorney as its party-appointed arbitrator, who served until he later withdrew from the panel. Four Seasons then named John Rooney, Esq. ("Rooney") as their party-appointed arbitrator without objection from Consorcio. App. 9. Consorcio named Dr. Luis Garcia Montoya ("Montoya"), as their party-appointed arbitrator. App. 6. It was subsequently determined that he was co-counsel on other legal matters with Consorcio's Venezuelan attorneys. Four Seasons objected and Consorcio then

appointed Emilio Pittier ("Pittier"), another Venezuelan attorney.   App. 7, App. 8 and App. 11. Four Seasons interposed no objections to Pittier, and together with Rooney, the two party-appointed arbitrators in accordance with the Hotel Agreements chose Dr. Horacio A. Grigera Naon ("Grigera Naon") as the Chairman of the Arbitral Tribunal. App. 12.

Shortly after the Arbitral Tribunal was fully constituted, Four Seasons petitioned the Arbitral Tribunal for Interim Relief in accordance with the AAA Rules.   Consequently, Grigera Naon scheduled a procedural conference to finalize procedures applicable to the arbitration. The conference would also consider whether or not Four Seasons would be entitled to interim relief, and any other issues that either party might have, including general procedural and scheduling issues. *See* Notice of Procedural Conference dated August 6, 2002, App. 13. The procedural conference was held telephonically on August 9, 2002, and both Consorcio's Venezuelan and Florida counsel actively participated in the conference.   During this Conference, Consorcio asserted for the first time that the 2000 Rules should not apply to the arbitration proceeding. Consorcio further stated that it intended to raise challenges to both the Arbitral Tribunal's jurisdiction and to the service of the Statement of Claim upon them.   The Arbitral Tribunal requested that the parties brief the issue of the applicable rules, and also identify the issues which they were requesting the Arbitral Tribunal to determine at that time.   Both parties submitted their responses. App. 14 and 15.

In due course, after having considered the arguments of counsel both at the telephonic procedural conference, and those in the written submissions, on August 15, 2002, the Arbitral Tribunal sent out to both parties Procedural Order No. 1. *See* Procedural Order No. 1, attached as App. 16. On the preliminary issue of the applicable rules, Procedural Order No. 1 determined that the 2000 Rules would apply to the arbitration. App. 16 at A. ¶4.  While noting Consorcio's

argument that the rules that were in effect when the agreements were written, *i.e.* the 1997 Rules, should apply, the Tribunal explained that neither party had objected to the use of the rules when the AAA sent their December 7th letter to them regarding the application of the 2000 Rules. *Id.* at A. ¶5. In addition, the Tribunal pointed out that Consorcio had actually invoked these rules when disqualifying Professor Gordon from the Arbitral Tribunal. *Id.* at A. ¶6. Therefore, the Tribunal concluded it would be unfair for Consorcio to argue that the 1997 Rules apply after it had already used the 2000 Rules to its advantage. In Procedural Order No. 1, the Arbitral Tribunal also decided to hold a preliminary evidentiary hearing in order to determine the question of its jurisdiction, Consorcio's allegations that it had not been properly served with the Statement of Claim, and Four Seasons' application for interim relief. *Id.* at B. ¶1. Procedural Order No. 1, then set out the procedures that would take place throughout the arbitration, set a briefing schedule for these issues, and set the evidentiary hearing to hear all the oral testimony for October 1-2, 2002. Consorcio did not challenge in any court or in any manner the Arbitral Tribunal's preliminary ruling in Procedural Order No. 1.

Pursuant to Procedural Order No. 1, each party presented their Memorials, Reply Memorials, witness statements, expert witness statements, witness lists, and documentary evidence. On October 2, 2002, the Arbitral Tribunal conducted the evidentiary hearing. App. 17. Both parties attended the hearing with both Venezuelan and Florida counsel and presented their evidence. In both their memorials and throughout the hearing, both parties presented extensive argument concerning the jurisdiction of the Arbitral Tribunal to decide issues regarding the case. Four Seasons argued that the Tribunal had jurisdiction to decide the issues under AAA Rules and U.S. law, while Consorcio argued that the Tribunal lacked this jurisdiction relying on Venezuelan law. Consorcio further contended that since the disputes involved the

operation of a Hotel in Caracas, the dispute was one that involved real property in Venezuela and was therefore within the exclusive jurisdiction of the Venezuelan courts. The Arbitral Tribunal considered expert testimony presented by both parties on this issue. Indeed, Consorcio acknowledged it had ample opportunity to present its case to the Arbitral Tribunal. As Eduardo Palmer, Esq. ("Palmer"), United States counsel for Consorcio, stated towards the conclusion of the hearing, "We are not alleging that this tribunal has deprived us of due process...In my mind, due process is when you haven't had adequate opportunity to defend yourself and present evidence in your favor...so there is no doubt that we are not contesting due process in these proceedings." *See* App. 17, Transcript of Oct. 2, 2002 hearing, at p. 166.

On October 10, 2002, the Arbitral Tribunal issued a unanimous decision where it denied Consorcio's jurisdictional arguments and ordered that Consorcio's litigation in Venezuela be dismissed. *See* Partial Award, App. 18. The Arbitral Tribunal also ordered Consorcio to arbitrate its disputes pursuant to the Hotel Agreements. In deciding that it had jurisdiction over the arbitration, the Arbitral Tribunal considered Consorcio's expert testimony, Four Seasons' expert testimony, the Hotel agreements, the arbitration clauses in these agreements, and generally accepted principles of comparative law. The Arbitral Tribunal then determined that:

> The Parties having agreed that the seat of this arbitration is located in the territory of the United States of America, it is a generally accepted principle in comparative arbitration law that the arbitral *lex arbitrii*, governing the powers and authority of the arbitrators sitting in the United States is the law of the United States.

App. 18 at ¶3. The Tribunal also decided in its Partial Award that under U.S. law, arbitrators, under similar contracts, are empowered to consider challenges to their own jurisdiction and can decide the scope and validity of the arbitration agreement. *Id.* Because the AAA Rules had been incorporated into the arbitration agreements, pursuant to the 2000 Rules, the Arbitral Tribunal

found that it was authorized to decide issues of arbitrability and jurisdiction. *Id.* at ¶¶3,4

Additionally, the Arbitral Tribunal rejected Consorcio's argument that the matter was within the

exclusive jurisdiction of Venezuelan law because it involved real property in Venezuela, stating

that:

> In any case, as just indicated, the disputes submitted to this arbitration
> exclusively deal with contractual rights, and remedies that may result
> should the Arbitral Tribunal conclude that breach or breaches have
> occurred. The claims submitted before this Arbitral Tribunal are not claims
> whose sole objective is the restitution of property or aimed at asserting,
> exercising or defending real rights in immovable property situated in
> Venezuela or elsewhere.

*Id.* at ¶19. The Arbitral Tribunal thus found that the arbitration involved matters relating to the

performance of services pursuant to the Hotel Agreements, and did not involve any real property

interest in property located in Venezuela.

On November 5, 2002, after the Partial Award was issued, Four Seasons filed a Motion to

Enforce the Partial Award in Federal Court. *See* Case No. 02-23249-Civ-Moore, D.E. 1. At the

same time, on November 15, 2002, Consorcio, in total disregard of the Partial Award's mandate,

filed a petition for constitutional relief in the 10th Superior Court for Civil, Commercial, and

Traffic Matters in and for the Metropolitan Caracas Judicial District – Constitutional Division.

That court found that parts of the Partial Award were "null and void" in accordance with

Venezuelan law, including the portion of the Partial Award that ordered Consorcio to stop

pursuing its claims in the Venezuelan Courts.

On December 19, 2002, the Arbitral Tribunal delivered its Procedural Order No. 2,

setting out the procedure for the final arbitration in this matter. *See* Procedural Order No. 2,

App. 19. Thereafter, on January 8, 2003, Consorcio filed a response to Four Seasons' Motion to

Confirm and Enforce the Partial Award. *See* Case No. 02-23249-Civ-Moore, D.E. 5. In its

response, Consorcio argued that the arbitration agreement was not valid under Venezuelan law, that the award was suspended by a Venezuelan court, collateral estoppel, lack of personal jurisdiction, and improper venue.  Consorcio also requested that the district court stay the Partial Award because it had applied to the Venezuelan courts for an order setting aside or suspending the award.   Along with this response, Consorcio also filed the Declaration of Badell—Consorcio's Venezuelan counsel and counsel of record in the arbitration—where Badell concedes that arbitral tribunals are empowered to decide their own jurisdiction. *See* Declaration of Alvaro Badell, Case No. 02-23249-Civ-Moore, D.E. 16, at ¶18.  Significantly, Consorcio did not move before the competent authority, this Court, to vacate the Partial Award, but rather chose to litigate in Venezuelan courts while continuing to litigate the merits of the dispute before the Arbitral Tribunal.

On March 21, 2003, the Arbitral Tribunal issued its Procedural Order No. 3, where it acknowledged the rescheduling of dates for the exchange of documents between the parties and the rescheduling of dates to hold the evidentiary hearing for the final arbitration. *See* Procedural Order No. 3, App. 20.  As directed in this Order, on May 20, 2003 and August 15, 2003, Consorcio filed their Memorial and Reply Memorial addressing the merits of the claims in arbitration, together with written expert witness statements, all in accordance with the rescheduled dates listed in the Order.

Following the issuance of Procedural Order No. 3, the district court entered an Order Confirming Arbitration Award and specifically ordered Consorcio to "avoid engaging in litigation before the Venezuelan courts as prohibited and detailed by that award," in accordance with the Partial Award. *See* June 4, 2003 Order Confirming Arbitration Award, Case No. 02-23249-Civ-Moore, D.E. 33.  Consorcio appealed the court's Order. Case No. 02-23249-Civ-

Moore, D.E. 34. And this Court denied Consorcio's Motion to Stay Enforcement of the Partial Award pending appeal. Case No. 02-23249-Civ-Moore, D.E. 50. [1]

In the meantime, while Consorcio's appeal of the Order Confirming the Partial Award was being litigated, both parties prepared for the final arbitration on the merits. Both parties exchanged Memorials, Reply Memorials, expert witness statements, produced hundreds of pages of documentary evidence, and participated in procedural hearings with counsel. Indeed, Consorcio fully participated substantively in the proceedings until September 2, 2003, when despite having fully participated in the arbitration up to that point, and only two weeks prior to the scheduled Final Hearing, Consorcio notified the Arbitral Tribunal that it was not going to attend the evidentiary hearing nor further participate in the arbitration proceeding.

On September 8, 2003, the Arbitral Tribunal issued its final and 4th Procedural Order. *See* Procedural Order No. 4, App. 21. As noted in this Order, Four Seasons objected to Consorcio's eleventh hour change of position and its decision to no longer participate in the hearing. Four Seasons confirmed it would participate in the September 22nd evidentiary hearing. App. 21at A.¶7. Additionally, in Procedural Order No. 4, the Arbitral Tribunal granted leave to Four Seasons' request to conduct a videotape inspection of the Hotel. *Id.* at B. ¶¶10-14. The Order also set forth the procedures to be followed during the September 22nd hearing, despite Consorcio's decision not to attend the hearing. *Id.* at C. ¶¶15-22.

Furthermore, on September 21, 2003, a day before the final evidentiary hearing, Pittier, Consorcio's party-appointed arbitrator, notified the other arbitrators that he would not be

---

[1] The Eleventh Circuit has decided this appeal in *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.,* 377 F.3d 1104 (11th Cir. July 20, 2004). The Eleventh Circuit vacated the district court's decision, remanding for the limited purpose of having this Court consider Consorcio's Article V(1)(a) objections to the Partial Award. However, the Eleventh Circuit did not disturb this Court's decision upholding the Arbitral Tribunal's finding that the procedural/arbitral law that should apply to the arbitral proceedings is the lex *arbitrii*, or U.S. law. Additionally, the Eleventh Circuit refused to rule on Consorcio's argument that the Arbitral Tribunal could not decide its own jurisdiction, as Consorcio had never raised this argument in the proceedings below. *Id.* at 1168-1169.

attending the evidentiary hearing in light of an order which had apparently been issued by the Sixth Superior Court in Civil, Commercial and Traffic Matters of the Judicial Circuit of the Metropolitan Area of Caracas a few days earlier, and which putatively directed the arbitrators to suspend the arbitration proceedings in Miami. *See* Email from Grigera Naon to the parties, App. 22.

On September 22, 2003, Grigera Naon, Rooney, counsel for Four Seasons, and one of Consorcio's Florida counsel, Joseph Matthews, Esq. ("Matthews"), appeared at the evidentiary hearing held in Miami, Florida. *See* Transcript of September 22, 2003 hearing, App. 23 at p. 6. Grigera Naon and Rooney informed the parties about Pittier's decision not to attend. App. 23, at Pp. 7-9. At the commencement of the hearing, Matthews informed the Arbitral Tribunal he was attending the hearing simply to observe, but did not have authority to answer any questions or address the Arbitral Tribunal. *Id.* at p. 6. At that point, each party was given the opportunity to present its views on the issue of Pittier's absence. After hearing from Four Seasons, and after Consorcio's counsel refused to respond, the Arbitral Tribunal conferred outside the presence of the parties and contacted the ICDR of the AAA. *Id.* at p. 36. Luis Martinez, Esq. Vice-President of the AAA, and the person in charge of the ICDR conducted a telephonic hearing which was attended by counsel for Four Seasons, as well as Matthews on behalf of Consorcio. *Id.* at p. 48. Matthews again reiterated that he had been instructed by Consorcio not to respond to queries. *Id.* at Pp. 55-56. Four Seasons, in turn presented argument to Mr. Martinez that under the AAA's 2000 Commercial Rules, the Arbitral Tribunal was empowered to proceed either as a two member Tribunal (in accordance with R-31) or the AAA could appoint a replacement arbitrator after declaring a vacancy. *Id.* at Pp. 48-55. After consideration of the matter, the ICDR issued its ruling, declaring "the office of the Respondent's party appointed Arbitrator vacant pursuant to

R-21 of the 2000 Rules," authorizing the remaining arbitrators to determine the continuation of the Evidentiary Hearing pursuant to R-21 (b) of the 2000 Rules, and inviting the Respondent to appoint an arbitrator to fill the vacancy within ten days pursuant to R-14 of such Rules. *See* D.E. 1, Exhibit 2 in Enforcement Motion, Final Award, ¶25; *see also*, Transcript of September 22, 2003 hearing, App. 23 at p. 60.

After reviewing the ruling of the ICDR and inviting the parties to express their respective positions, the Arbitral Tribunal decided to continue with the evidentiary hearing as planned and Four Seasons presented its arguments, while Matthews maintained his observer status. During the hearing, Four Seasons presented multiple factual and expert witnesses, who were also thoroughly questioned by the Arbitral Tribunal, and a complete transcript of the proceedings was taken. The hearing ended on September 25, 2003. Despite Consorcio's decision not to participate in the Final Hearing, Consorcio's Memorials, documentary evidence and witness statements were taken into account by the Arbitral Tribunal in rendering its award. *See* D.E. 1, Exhibit 2 in Enforcement Motion, Final Award, ¶50. Because Consorcio did not appoint another party-appointed arbitrator, the ICDR appointed Jose Maria Abascal, Esq. ("Abascal") as the new member of the Arbitral Tribunal on October 20, 2003, following AAA Rules.

On October 30, 2003, the Arbitral Tribunal invited the parties to submit Post-Hearing briefs by December 1, 2003. Four Seasons timely filed a brief and Consorcio chose not to do so. Subsequently, on March 8, 2004, the Arbitral Tribunal solicited the parties to provide any further proof or witness statement to be considered prior to rendering its opinion. The Arbitral Tribunal, being satisfied that the record was complete then declared the hearing closed on March 17, 2004.

On March 22, 2004, ICDR issued the Arbitral Tribunal's Award to the parties. *See* Exhibit 2 in Enforcement Motion, Final Award. The award grants the relief requested by Four

CASE NO. 04-20673-CIV-MOORE

Seasons, including *inter alia*: (i) a determination that Consorcio Barr breached the Hotel Agreements with Four Seasons; (ii) ordering that Consorcio Barr specifically perform all of its obligations under the Hotel Agreements; (iii) for so long as the Hotel Management Agreement shall remain in force, permanently enjoining Consorcio Barr from directly or indirectly interfering in the management of the Hotel; (iv) directing Consorcio Barr to cause its officers, directors and agents not to interfere in the management of the Hotel; (iv) awarding the various Four Seasons Claimants an aggregate of $8,166,100.00 in compensatory damages for the breaches of the contracts; (v) awarding Four Seasons pre-award and post-award simple interest on the $8,166,100.00 awarded; and (vi)  taxation of arbitrators' fees and administrative fees against Consorcio Barr in the sum of $253,635.43. *Id.* Pp. 65-67.

Furthermore, the Hotel Agreements provide that awards of the Arbitral Tribunal "when reduced to writing and signed by them shall be final, conclusive and binding upon the parties hereto, and may be enforced in any court having jurisdiction." *See,* HMA § 19.03(b), Ex. "A" to Comp. Ex. "1" in Enforcement Motion (D.E. 1); HAA §17.03(b), Ex. "B" to Comp. Ex. "1"; HSA §10.03(b), Ex. "C" to Comp. Ex. "1"; and HPOSA §17.03(b), Ex. "D" to Comp. Ex. "1".

Following the transmission of the Final Award, Four Seasons filed the Enforcement Motion on March 22, 2004. On June 8, 2004, Consorcio filed a Motion to Dismiss, Answer, and Affirmative Defenses, as well as a Counterclaim to Vacate Final Award of Arbitrators. Thereafter, on August 13, 2004, Four Seasons filed Plaintiffs/Counter-Defendants' Answer and Affirmative Defenses to Counterclaim to Vacate Final Award of Arbitrators.

CASE NO. 04-20673-CIV-MOORE

## MEMORANDUM OF LAW

### I.    Applicable Legal Standards

A motion for summary judgment should be granted "when there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law.'" *Focus on the Family v. Pinellas Suncoast Transit Authority*, 344 F.3d 1263, 1271 (11th DCA 2003) citing Fed.R.Civ.P. 56(c); *See also Counts v. American Gen. Life & Acc. Ins.*, 11 F.3d 105,107 (11th Cir. 1997); *Harris v. Board of Educ.*, 105 F.3d 591, 595 (11th Cir. 1997); *Brisentine v. Stone & Webster Engineering Corporation*, 117 F.3d 519, 522 (11th Cir. 1997).  "While the movant bears the initial burden of production in demonstrating that there is no genuine issue of material fact, the nonmoving party has the burden of making a showing sufficient to establish the existence of each element essential to the movant's case on which he will bear the burden of proof at trial." *K. Langston v. ACT*, 890 F.2d 380, 383 (11th Cir. 1989); *See also Celotex Corp. v. Cattrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-323.

Under Federal Rules of Civil Procedure 12(c), a court will grant a judgment on the pleadings "where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001).   The court will "accept the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party." *Id.*; *See also Mergens v. Dreyfoos*, 166 F.3d 1114, 1117 (11th Cir. 1999); Ortega v. Christian, 85 F.3d 11521, 1524-1525 (11th Cir. 1996).

13

CASE NO. 04-20673-CIV-MOORE

"'Judgment on the pleadings is appropriate only when the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Horsley v. Feldt*, 304 F.3d 1125 (11th Cir. 2002), quoting *Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209, 1213 (11th Cir. 2001), *cert. denied*, 535 U.S. 1018, 122 S.Ct. 1608, 152 L.Ed.2d 622 (2002). "Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Hawthorne v. Mac Adjustment, Inc.* 140 F.3d 1367, 1370 (11th Cir. 1998).

There are no genuine issues of material fact in the instant action. This Court should grant Four Seasons' Motion for Summary Judgment or in the Alternative a Judgment on the Pleadings. The essential allegations under which Consorcio files its Counterclaim and Answer and Affirmative Defenses carry no merit and are superceded by recent case law. Four Seasons will address each allegation individually and thereafter demonstrate how each defense presents no genuine issue of material fact.

II.     **Consorcio alleges that the Arbitral Tribunal has no authority to decide its own jurisdiction.**

In its Counterclaim, Consorcio disputes the jurisdiction and authority of the arbitrators and of the Court under the Hotel Agreements citing to applicable provisions of the Federal Arbitration Action ("FAA") and/or the New York Convention. Consorcio has already litigated this argument before the Arbitral Tribunal prior to its issuance of the Partial Award and therefore, Consorcio is collaterally estopped from presenting this argument to this Court. "Collateral estoppel or issue preclusion forecloses relitigation of an issue of fact or law that has been litigated and decided in a prior suit." *I.A. Durbin, Inc. v. Jefferson National Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986). Consorcio is simply relitigating an issue which it raised before the Arbitral Tribunal and lost after it submitted the issue for determination.

Nevertheless, to reiterate the Arbitral Tribunal's decision on its authority to decide its own jurisdiction, which was confirmed by this court in *Four Seasons Hotels and Resorts v. Consorcio Barr, S.A.*, 267 F.Supp.2d 1335, 1347-48 (S.D. Fla. 2003), *vacated on other grounds, Four Seasons Hotels Resorts, B.V. v. Consorcio Barr, S.A.*, 377 F.3d 1164 (11th Cir. July 20, 2004), according to the 2000 Rules of the AAA, the Arbitral Tribunal had the authority and the power to decide its own jurisdiction. In the parties' Hotel Agreements, the parties incorporate the Commercial Arbitration Rules of the American Arbitration Association. *See* HMA § 19.03, , Ex. "A" to Comp. 1 in Enforcement Motion (D.E. 1); HAA §17.03, Ex. "B" to Comp. 1; HAS §10.03, Ex. "C" to Comp. 1; and HPOSA §17.03, Ex. "D" to Comp. 1. In its Procedural Order No. 1, the Arbitral Tribunal makes it clear that the 2000 Commercial Arbitration Rules of the American Arbitration Association applied to these arbitral proceedings. The Tribunal also points out in this order that Consorcio had already used these rules to its advantage in disqualifying one of Four Seasons' party-appointed arbitrator and "it would be both unfair and defeat the legitimate expectations of the Parties to decide that different arbitration rules would apply to these proceedings." *See* Procedural Order No. 1, App. 16 at A. ¶ 6. As stated by the Arbitral Tribunal in its Partial Order, in section R-8(a) of the 2000 Rules, "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." *See* Partial Award, App. 18, at ¶ 4. The Arbitral Tribunal thus found it had the authority and power to decide its own jurisdiction pursuant to the parties' agreements. "Absent extraordinary circumstances, a confirming court is not to reconsider the arbitrator's findings." *Europcar Italia v. Maiellano Tours, Inc.,* 156 F.3d 310, 315 (2nd DCA 1998).

Additionally, Consorcio's own counsel, Badell, admitted before this Court that "it is recognized that arbitral tribunals have the power to decide their own jurisdiction." *See* Declaration of Alvaro Badell dated January 8, 2003, and filed on January 27, 2003 in Case No. 02-23249-Civ-Moore, as D.E. 16, p. 6 at ¶18. No genuine issue of material fact can therefore exist as to the Arbitral Tribunal's authority to decide its own jurisdiction.

### III. Using Article V(1)(a) as a defense, Consorcio alleges that the arbitration provisions pursuant to which the arbitration was conducted are not valid under Venezuelan law.

In the Partial Award, the Arbitral Tribunal decided that the arbitration provisions in the agreements were valid under United States law. In contrast to this decision, Consorcio argues that under Venezuelan law, specifically under the decision of the Supreme Court of Justice of Venezuela and the Orders of the Tenth Court of First Instance for Civil, Mercantile and Traffic Matters of the Judicial Circuit of Caracas ("Tenth Court"), the arbitration provisions are not valid and thus any decision resulting from the use of these provisions are unenforceable. No genuine issue of material fact exists with this argument for two reasons. First, the Venezuelan court's decision as to the validity of the arbitration agreements is irrelevant because it is a country of secondary jurisdiction under the New York Convention and under a recent Fifth Circuit Court decision, *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274 (5th Cir. 2004) ("Pertamina II"). The Venezuelan court, as a court of secondary jurisdiction, only has the power to enforce or refuse to enforce an Arbitral Award which was issued in another country. A Venezuelan court has no say whatsoever with respect to an arbitral award rendered in the United States, specifically, in Miami, Florida, pursuant to U.S. law and AAA Rules. Second, Consorcio is collaterally estopped from making this argument since the Arbitral Tribunal has already ruled on this issue in its Partial Award.

16

In *Pertemina II*, the plaintiffs, Karaha Bodas Co., similar to Four Seasons in the instant action, sought and obtained a Summary Judgment from a Texas district court, resulting in the enforcement of a Swiss arbitration award.  Following this order, Pertemina, the defendants, sought and obtained an order from an Indonesian court annulling the award.  Among other things, Pertemina then asked the Fifth Circuit Court to reverse the lower court's order of summary judgment because of the Indonesian court's order, arguing the Indonesian order made the award unenforceable under the Article V defenses of the New York Convention.  The two contracts involved in *Pertamina II* contained identical arbitration agreements which required the parties to arbitrate any disputes in Geneva, Switzerland under the Arbitration Rules of the United Nations Commission on International Trade Law ("UNCITRAL").  *Pertemina II*, 364 F.3d at 282.  In deciding whether or not to affirm the lower court's summary judgment order, the Fifth Circuit had to necessarily decide whether or not the Indonesian court had the authority to declare an arbitral award, governed by procedural Swiss law, null and void.  The Fifth Circuit here explained the following:

> The New York Convention provides a carefully structured framework for the review and enforcement of international arbitral awards. Only a court in a country with primary jurisdiction over an arbitral award may annul that award.  Courts in other countries have secondary jurisdiction; a court in a country with secondary jurisdiction is limited to deciding whether the award may be enforced in that country....under the [New York] Convention, 'the country in which, or under the [arbitration] law of which, [an] award was made' is said to have primary jurisdiction over the arbitration award.

*Id.* at 287 (citing *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d. Cir. 1997))  Under the Fifth Circuit's rationale, a court of a country with primary jurisdiction is the only court that could declare an award null and void and courts from other jurisdictions only have the power to decide whether to enforce an award in their particular country.  The Fifth Circuit then decided that the United States as well as Indonesia only had the

power to enforce the arbitral decision and only a Swiss court had the power to declare the award null and void. As such, the Fifth Circuit upheld the district court's summary judgment decision.

Using this same rationale, this Court must grant Four Seasons' Motion for Summary Judgment because the Venezuelan courts have no authority to declare any part of the Arbitral Tribunal's decision null and void, including the Tribunal's decision regarding the validity of the arbitration provisions in the Hotel Agreements. In the instant case, the arbitration provisions between the parties stated that "the arbitration shall at the election of the Operator [Four Seasons] be held in the City of Miami, Florida, United States of America or the City of Caracas, Republic of Venezuela..." *See* HMA § 19.03, , Ex. "A" to Comp. 1 in Enforcement Motion (D.E. 1); HAA §17.03, Ex. "B" to Comp. 1; HAS §10.03, Ex. "C" to Comp. 1; and HPOSA §17.03, Ex. "D" to Comp. 1. Four Seasons chose to conduct the proceedings in Miami, Florida. Therefore, the court of primary jurisdiction is the court of the United States and thus the Venezuelan courts can only enforce an Award issued by the Arbitral Tribunal. Under *Pertamina II*, the Venezuelan courts have no authority to declare the Arbitral Tribunal's Partial and Final Award null and void.

Consorcio also misinterprets the phrase "the country in which, or under the law of which, an award is made," found in Article V of the New York Convention, and then conveniently confuses this with the substantive law under the Hotel Agreements, which is Venezuelan law. The "country in which" the Partial and Final Awards were made is the United States. The "law under which" the Partial and Final Awards were made was U.S. law, as the *lex arbitrii*. The authorities uniformly hold that reference to the law "under which an award is made" is a reference to the arbitral law which determines the authority of the arbitrators and the scope and validity of the arbitration agreements. It is not a reference to the substantive law of the contract.

In addition, the decision of Venezuelan courts after the issuance of the Partial Award are irrelevant on estoppel grounds. Through the Partial Award, the Arbitral Tribunal decided that the arbitration provisions in the Hotel Agreements were enforceable and that the Venezuelan courts did not have exclusive jurisdiction to decide issues regarding the enforceability of the arbitration provisions nor their effect on the arbitration between these parties. Throughout the arbitration proceedings which led to the issuance of the Partial Award, both parties had the opportunity to litigate this issue to the Arbitral Tribunal and both parties presented their arguments and evidence. In fact, as was admitted by Consorcio's own attorney, Palmer, during the preliminary arbitration proceedings, Consorcio was never denied its due process and thus had its full opportunity to be heard and make its arguments. *See* Transcript of Oct. 2, 2002 hearing, App. 17, at p. 166. The fact that Consorcio subsequently obtained a contrary ruling from a Venezuelan court cannot undo the effects of its litigation of and submission to the arbitration.

Additionally, as the Arbitral Tribunal describes in the Partial Award, neither party challenged the validity of the provisions in the agreements that relate to the arbitration proceedings. After fully hearing both parties' arguments on other preliminary grounds, the Arbitral Tribunal decided that the arbitration agreements were valid under United States law. The Arbitral Tribunal also pointed out, interpreting the agreements, that resort to the Venezuelan courts is limited to allow a party "to pursue limited forms of relief...which we read to be mandatory, declaratory or injunctive relief sought in furtherance of and consistent with the obligation of the parties to arbitrate disputes." *See* Partial Award, App. 18, at ¶10. The Arbitral Tribunal further states,

> Venezuelan courts cannot be utilized to bar the initiation of or to disrupt the normal course of an arbitration undertaken according to article 19.03, nor prevent its normal outcome...Therefore, the arbitration clause in Section 19.03 is the source of an absolute and peremptory obligation of the Parties

> thereto to submit to and accept the jurisdiction of arbitration tribunals drawing their authority from this provision, and entitles any of the Parties to obtain court support to enforce such obligation.

*Id.* at ¶11.  These were the findings of the Arbitral Tribunal regarding the Venezuelan courts' authority to decide issues between Four Seasons and Consorcio and as stated *supra*, "absent extraordinary circumstances, a confirming court is not to reconsider the arbitrator's findings." *Europcar Italia*, 156 F. 3d at 315. In *Europcar*, as in the instant action, there was a dispute as to whether or not the parties intended to be legally bound by the arbitration agreements.  The arbitrators in that case decided that "both arbitration agreements stated unambiguously that the arbitration was to finally resolve the dispute and the arbitrators found that the parties intended to be bound by their award." *Id.*  The Court further found that this decision by the arbitrators did not consist of sufficient extraordinary circumstances to second guess the arbitrator's findings.

Similarly, the arbitration provision in the Hotel Agreements between the parties in the instant action states, "the decision of the arbitrators (or such single arbitrator) shall be made within 10 days...and the decision of a majority of the panel (or such single arbitrator) when reduced to writing and signed by them shall be final, conclusive and binding upon the parties hereto, and may be enforced in any court having jurisdiction." *See* HMA § 19.03, , Ex. "A" to Comp. 1 in Enforcement Motion (D.E. 1); HAA §17.03, Ex. "B" to Comp. 1; HAS §10.03, Ex. "C" to Comp. 1; and HPOSA §17.03, Ex. "D" to Comp. 1.  Therefore, the Arbitral Tribunal's decision in the Partial Award that the arbitration provisions are binding on the parties and cannot be second guessed because the decision does not present the extraordinary circumstances necessary for such review pursuant to *Europcar*. Since the decision of the Venezuelan courts are irrelevant under *Pertemina II*, and in any event those decisions are after-the-fact, there can be no extraordinary circumstances warranting the questioning of the Arbitral Tribunals' decision on the

CASE NO. 04-20673-CIV-MOORE

enforceability of the arbitration provisions in the Hotel Agreements, and there is no genuine issue of material fact as to whether or not the Venezuelan courts found the arbitration agreements to be invalid.

**IV.   Consorcio alleges it was unable to present its case to the arbitrators out of respect to the Venezuelan courts using Article V(1)(b) of the New York Convention as a defense.**

Article V(1)(b) of the New York Convention provides for a defense to enforcement when "the party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case." 9 U.S.C. §201, Article V(1)(b). Relying on Article V(1)(b) of the New York Convention as a defense, Consorcio argues that it was unable to present its case to the arbitrators out of respect to the judicial court of Venezuela. It further argues that the Courts of Venezuela have already appointed an officer to control the Hotel and to control matters regarding the Hotel Agreements in order to decide each parties' contractual obligations and that the United States courts must respect these decisions. In addition, Consorcio argues that if it would have submitted fully to the arbitration, it would have waived its rights to pursue claims in Venezuelan. Therefore, using Article V(1)(b), Consorcio challenges the validity of the Final Arbitral Award under the notion that it was denied its due process rights to present its case to the Arbitral Tribunal and that therefore, the Final Award issued by the Arbitral Tribunal should not be enforced against them.

Consorcio's argument is superficial at best as a factual matter and legally insufficient. By its very terms, this provision of the New York Convention seeks to address an arbitral award that is entered by default. The facts here are far removed from such a case: a) Consorcio appointed an arbitrator after notice and service of the Statement of Claim and Demand for Arbitration; b) Consorcio, its Venezuelan and Florida counsel, presented evidence and oral

argument to a duly constituted Arbitral Tribunal; and c) Consorcio submitted for determination by the Arbitral Tribunal preliminary issues including jurisdiction and the applicability of Venezuelan law.    Consorcio voluntarily elected to end its participation, used as a pretext for such decision its respect for the decisions of the Venezuelan courts—courts who had no jurisdiction to suspend or vacate this arbitration proceeding.  Interestingly, after receiving an adverse ruling in the Partial Award, Consorcio resorts to the Venezuelan courts to seek annulment of the Partial Award, yet fails to seek to vacate the Partial Award before this Court— the Court with primary jurisdiction under the New York Convention and therefore, the only Court which could properly decide the issue.

If that were not enough, after the issuance of the Partial Award, Consorcio Continues to participate in the arbitration proceedings by:  a) submitting Memorials, Reply Memorials, witness statements and expert witness declarations, and documentary evidence; b) participating in procedural conferences and hearings through the end of the final hearing; and c) by sending its Florida counsel to the Final Hearing as an "observer."    All of this conduct demonstrates complete notice of the proceedings and full opportunity to be heard and indeed, demonstrates that Consorcio was in fact heard through its memoranda and evidence.   The fact that Consorcio chose to boycott the Final Hearing after fully participating in the proceedings can hardly be described as an "inability to present [its] case."

There are very few cases where a court has granted relief under Article V(1)(b) of the Convention. "It has been held that this section of the Convention is violated where the arbitral process has failed to comply with this country's fundamental fairness and due process." *Geotech Lizenz AG v. Evergreen Systems, Inc.*, 697 F. Supp. 1248, 1253 (E.D. New York, 1988) (citing *Parsons & Whittemore Overseas Co. v. Societe Generale De L'Industrie Du Papier (RAKTA),*

22

508 F. 2d 969, 975 (2nd DCA 1974)). The Court in *Geotech* held that a party was not denied due process and not denied its opportunity to present its defenses under Article V(1)(b) when it had sufficient notice of the arbitration, but chose not to respond. *Id.* Additionally, the Court explained that the defendant's "failure to participate was a decision that was reached only after the Company had full knowledge of the peril at which it acted." *Id.*

Similarly, in the instant action, Consorcio was not denied its due process rights to be heard in the arbitration. In fact, up until two weeks before the scheduled evidentiary hearing, as demonstrated above, Consorcio fully participated in the arbitration by submitting motions, affidavits, witness lists, Memorials, and briefs. Consorcio participated in the arbitration as much as it participated in the preliminary hearing where its own counsel, Palmer, proclaimed that Consorcio had not been denied its due process rights. Mr. Palmer's statement bears quoting again: "We are not alleging that this tribunal has deprived us of due process...In my mind, due process is when you haven't had adequate opportunity to defend yourself and present evidence in your favor...so there is no doubt that we are not contesting due process in these proceedings." *See* Transcript of Oct. 2, 2002 hearing, App. 17 at p. 166. The same opportunity Consorcio had prior to the preliminary hearing, Consorcio had in the arbitral proceedings on the merits. Consorcio indeed took advantage of the opportunity because it presented its arguments through its Memorials and submitted evidence, evidence taken into account by the Arbitral Tribunal in rendering its opinion. This is clearly not a denial of due process within the meaning of Article V(1)(b) of the Convention.

> **V.    Consorcio alleges that the Arbitral Tribunal decided issues beyond the scope of their authority using Article V(1)(c) of the New York Convention as a defense.**

Consorcio argues that the Arbitral Tribunal overstepped its boundaries in not limiting itself to simply awarding damages against a party for any alleged breach. Consorcio further states that the Arbitral Tribunal disregarded the Venezuelan court's order in which it appointed a judicial officer to take control of the property and that the Tribunal determined possessory rights to the Hotel. By doing this, Consorcio argues that the Arbitral Tribunal violated the Venezuelan's court exclusive jurisdiction over real property in Venezuela. These arguments present no genuine issue of material fact because if one clearly reads the Arbitral Tribunal's decision, one finds that the Arbitral Tribunal actually decided that the Hotel Agreements involved the performance of services and not title to, or an interest, in real property. Whether or not the performance of these services was on Venezuelan real property was irrelevant. In the Partial Award, the Arbitral Tribunal explicitly states,

> In any case, as just indicated, the disputes submitted to this arbitration exclusively deal with contractual rights, and remedies that may result should the Arbitral Tribunal conclude that breach or breaches have occurred. The claims submitted before this Arbitral Tribunal are not claims whose sole objective is the restitution of property or aimed at asserting, exercising or defending real rights in immovable property situated in Venezuela or elsewhere .

*See* Partial Award, App. 18, at ¶19. The Hotel Agreements provide a method through which any disputes or claims arising out of the Hotel Agreements should be dealt with and the Arbitral Tribunal's decision was consistent with this method. Therefore, "absent extraordinary circumstances, a confirming court is not to reconsider the arbitrator's findings." *Europcar*, 156 F.3d at 315.

Finally, it is curious that Consorcio would raise the issue of the appointment of a judicial officer in Caracas, arguing that the Arbitral Tribunal has disrespected the Venezuelan Court's order, when in fact the judicial officer was appointed at Consorcio's request to countermand this

Court's Final Judgment and Permanent Injunction in Case No. 01-4572-Civ-Moore.   As a result of Consorcio's contumacious disregard of a Final Judgment of this Court, it has been found in contempt.  *See* Civil Contempt Order in Case No. 01-4572-Civ-Moore, D.E.  496.

**VI.     Consorcio alleges that the Hotel Agreements' provisions regarding the appointment of arbitrators to the Arbitral Tribunal was violated using Article V(1)(d) of the New York Convention as a defense.**

Consorcio alleges that when its party-appointed arbitrator withdrew from the Arbitral Tribunal, the ICDR improperly appointed a replacement arbitrator.  Consorcio also suggests that the Arbitral Tribunal's decision was biased since the Arbitral Tribunal should have been aware it would be compensated by Four Seasons.  These statements are incorrect and present no genuine issue of material fact.  The Arbitral Tribunal at all times acted pursuant to the parties Hotel Agreements which asserted that in case of arbitration, "the Commercial Arbitration Rules of the American Arbitration Association" would apply. *See,* Section 19.03, Management Agreement, Ex. "A" to Comp. 1 in Enforcement Motion; §17.03, Advisory Agreement, Ex. "B" to Comp. 1 in Enforcement Motion; §10.03, Services Agreement, Ex. "C" to Comp. 1 in Enforcement Motion; and §17.03, Pre-Opening Agreement, Ex. "D" to Comp. 1 in Enforcement Motion.

When the party-appointed arbitrator for Consorcio, Pittier, only a day before the Arbitration Hearing was to take place, decided he was not going to be part of the Tribunal, the Arbitral Tribunal asked the parties to give their views on the issue of Pittier's absence. Consorcio decided not to participate at this point of the hearing and Four Seasons argued its position.  The Arbitral Tribunal then contacted the ICDR of the AAA.  The ICDR, in accordance with the 2000 Rules, declared that "the office of the Respondent's party appointed Arbitrator vacant pursuant to R-21 of the 2000 Rules, authorized the remaining arbitrators to determine the continuation of the Evidentiary Hearing pursuant to R-21 (b) of the 2000 Rules, and invited the

CASE NO. 04-20673-CIV-MOORE

Respondent to appoint an arbitrator to fill the vacancy within ten days pursuant to R-14 of such Rules." *See* Exhibit 2 in Enforcement Motion, Final Award, ¶25; *see also*, App. 23 at p. 60. Consorcio did not challenge or appeal this decision, nor did it appoint another party-appointed arbitrator and thus pursuant to the 2000 Rules, the ICDR appointed Jose Maria Abascal as the new arbitrator, who was then provided a complete copy of both the parties submissions and the transcript of the September Final Hearing. At all times, then, the Arbitral Tribunal as well as the ICDR, conducted itself in accordance with the 2000 Rules, which were applicable to the parties' arbitration pursuant to the parties' Hotel Agreement. As such, Consorcio's allegation that the ICDR improperly appointed a replacement arbitrator lacks merit and presents no genuine issue of material fact.

Consorcio's other unfounded allegation, suggesting that the arbitrators were biased against it in their decision because they knew that they were being compensated by Four Seasons, is also nonsense. First, in reaching its decision, the Arbitral Tribunal considered evidence submitted by both Consorcio and Four Seasons. It was only a few days before the Evidentiary Hearing that Consorcio decided to no longer participate in the arbitration. Additionally, throughout its issuance of the Partial Award and the Final Award, Consorcio participated in the arbitration by submitting their Memorials, briefs, etc. Therefore, there was no way that the Arbitral Tribunal could be aware that Four Seasons would be the only one compensating the Tribunal through payment of the fees to the AAA, and indeed, the AAA notified Consorcio in writing that as a matter of policy and practice, none of the arbitrators knew which party had met its obligations to pay fees, because all payments are made to the AAA.

Consorcio's accusation of bias in the Arbritral Tribunal's decision has yet another flaw. Not only did the Arbitral Tribunal lack knowledge of which party paid fees to the AAA, but

CASE NO. 04-20673-CIV-MOORE

Consorcio also fails to explain how its own party-appointed arbitrator, Pittier, a Venezuelan attorney, joined in the Partial Award and ruled against Consorcio.   The fact remains that the Tribunal's Final and Partial Awards are approximately 88 pages of well-reasoned analysis replete with citations to evidence and authority, hardly an example of the work of a corrupt panel.   If anything, the Awards demonstrate that the Arbitral Tribunal rigorously and meticulously concentrated on each and every issue presented to it after considering both parties' evidence.   Thus, there is no direct evidence showing any type of partiality by the arbitrators.   In *Lifecare International, Incorporated v. CD Medical, Inc.*, 68 F.3d 429 (11th Cir. 1995), the Eleventh Circuit stated, "This Court has reasoned that the alleged partiality must be 'direct, definite and capable of demonstration rather than remote, uncertain and speculative." *Id.* at 433 (citing to *Middlesex Mut. Ins. Co. v. Levine*, 675 F.2d 1197, 1201 (11th Cir. 1982)).   The Court further stated, "[A]ccordingly, the mere appearance of bias or partiality is not enough to set aside an arbitration award." *Lifecare International, Incorporated*, at 433 (citing to *Consol. Coal v. Local 1643, United Mine Workers*, 48 F.3d 125, 129 (4th Cir. 1995)).   Even if there were the mere appearance of bias or partiality, which Four Seasons denies, it would still not be enough to set aside an arbitration award. Without more, an adverse ruling from an Arbitral Tribunal is no more indicative of bias or partiality than an adverse ruling from a Court.   Consorcio's allegations under Article V(1)(d), therefore, present no genuine issue of material fact.

**VII.   Consorcio alleges that because the Arbitral Tribunal's award involves real property, the award has not and will never become binding on the parties because issues involving real property in Venezuela are within the exclusive jurisdiction of the Venezuelan courts; therefore, Consorcio alleges that the Award has not become binding under the law of which the Award was made, which they allege to be Venezuelan law.**

Consorcio argues that the arbitrators, by "ruling that Four Seasons is entitled to possession of real property within the jurisdiction of the sovereign Republic of Venezuela," have

27

interfered with the lawful authority of the Tenth Court and the officers appointed by that court and is therefore not binding and never will become binding under the applicable law of Venezuela. Impliedly, Consorcio uses this argument to stand for the proposition that the competent authority under Article V(1)(e) of the Convention is Venezuela and thus, Venezuelan law is the law that this Court should look to as binding in deciding whether or not to enforce this Final Arbitral Award.

By reaching this conclusion, Consorcio has completely disregarded and misapplied the laws of this country. Consorcio's reliance on Article V(1)(e) presents no genuine issue of material fact because whether or not the Venezuelan courts decide that the Final Arbitral Award is binding or not is irrelevant as to issue of the Award's validity under *Pertamina II*. In *Pertemina II*, the court concludes that only a court with primary jurisdiction is the competent authority that can declare an arbitral award null and void and a court which has secondary jurisdiction can only decide whether or not to enforce the arbitral award in its own jurisdiction, but cannot declare it null and void. The defendants, Pertemina, tried to use Article V(1)(e) as a defense under the New York Convention, arguing that the competent authority and the law which should govern the enforceability of the arbitral award is Indonesian law because that was the substantive law that was used in the arbitration. Discussing Article V(1)(e) of the New York Convention, the court explicitly states, "Courts have held that the language, 'the competent authority of the country…under the law of which, that award was made' refers exclusively to procedural and not substantive law, and more precisely, to the regiment or scheme of arbitral procedural law under which the arbitration was conducted, and not the substantive law….applied in the case.'" *Pertamina II*, 364 F.3d at 289 (citing to *Int'l Standard Elec. Corp. v. Bridas Sociedad Anonima Petrolera, Indus. Y Commercial*, 745 F.Supp. 172, 178 (S.D.N.Y. 1990)).

CASE NO. 04-20673-CIV-MOORE

As discussed *supra*, the court in *Pertemina II* was confronted with a remarkably similar situation as the one present in the instant action. Pertemina argued that although the agreement specified that the arbitration was to take place in Geneva, Switzerland, the parties specified that Indonesian substantive law would apply and as such the competent authority should be Indonesia. However, the court explains that "under the New York Convention, an agreement specifying the place of the arbitration creates a presumption that the procedural law of that place applies to the arbitration." *Pertamina II*, at 291. Therefore, because the procedural law that applied was the Swiss procedural law, the court decided that according to the New York Convention, the only country with primary jurisdiction that would be the competent authority to declare an arbitral award null and void was Switzerland.

Similarly, in the instant action, the parties' agreements established that "the arbitration shall at the election of the Operator [Four Seasons] be held in the City of Miami, Florida, United States of America or the City of Caracas, Republic of Venezuela." *See* HMA § 19.03, , Ex. "A" to Comp. 1 in Enforcement Motion (D.E. 1); HAA §17.03, Ex. "B" to Comp. 1; HAS §10.03, Ex. "C" to Comp. 1; and HPOSA §17.03, Ex. "D" to Comp. 1. The Hotel Agreements also explicitly specified that the arbitration "shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association." *Id.* The arbitration between the parties took place in Miami, Florida, and the Arbitral Tribunal specifically found U.S. procedural law, as the law of the forum, applied. Accordingly, the only competent authority over the Arbitral Award is the United States and this Court. The Venezuelan courts only have the authority to decide whether or not to enforce the award in Venezuela. They have no say on whether or not the Award shall become binding in other countries. Consorcio's reliance on Article V(1)(e) thus carries no merit and presents no genuine issue of material fact.

**VIII.** **Consorcio alleges that the Arbitral Award would "violate the most basic principles of comity among nations" because it is "dictating" to the Venezuelan courts what to do with real property located in their country and is thus against the public policy of the United States using Article V(2)(b) of the New York Convention as a defense.**

Consorcio's allegations once again present no genuine issue of material fact because the Arbitral Tribunal's award does not in any way violate the public policy of this country. To begin with, there is a "general pro-enforcement bias" within the Convention. *See Pertamina II*, at 306. In *Fotochrome, Inc. v. Copal Co.*, 517 F. 2d 512, 516 (2d. Cir. 1975), the Court explained that the public policy defense is "'exceedingly narrow.'" *Slaney v. The International Amateur Athletic Federation*, 244 F.3d 580, 593 (2001). "The public policy defense is to be 'construed narrowly to be applied only where enforcement would violate the forum state's most basic notions of morality and justice.'" *Pertamina II* at 306 (citing *M & C Corp. v. Erwin Behr GmbH & Co., KG*, 87 F.3d 844, 851 n. 2 (6th Cir. 1996)). Consorcio argues that because the Arbitral Award dictates to the Venezuelan court who should be entitled to real property in Venezuela, the Award is intrusive upon the Venezuelan's courts exclusive jurisdiction. However, as already discussed *supra*, the issue involved in the Arbitral Award is not one involving the property rights to real property in Venezuela. Instead, the issues involve contractual duties of the parties. Consorcio breached these duties and thus under the parties' Agreements, was subject to arbitration. Therefore, in enforcing the Final Arbitral Award, this court would not be violating any principles of comity between nations because the Venezuelan courts do not have jurisdiction over the contractual rights of the parties. Instead, the parties agreed to submit any disputes involving those rights to arbitration pursuant to the 2000 Rules.

Additionally, in *Industrial Risk Insurers v. M.A.N. Gutenhoffnungshutte, GmbH*, 141 F.3d 1434 (11th Cir. 1998), the Eleventh Circuit made it clear that in order for an arbitral award to be

vacated on public policy grounds, the award has to target a specific public policy. The court there states,

> We have held that domestic arbitral awards are unenforceable on grounds that they are violative of public policy only when the award violates some "explicit public policy" that is "well-defined and dominant...[and is] ascertained 'by reference to the laws and legal precedents and not from general consideration of supposed public interests.'"...We believe that rule applies with equal force in the context of international arbitral awards.

*Id.* at 1445.

In their Counterclaim, Consorcio at no time makes a claim that Four Seasons has violated a specific public policy. Instead it makes the same claim that it has repeatedly made and failed in making by stating that enforcing the Arbitral Award would "violate the most basic principles of comity among nations, which are a part of the public policy of the United States." This does not meet this test of specificity and even if it did, there would be no public policy violation because the issues decided by the Arbitral Award were properly submitted to the Arbitral Tribunal. Consorcio's public policy argument presents no genuine issue of material fact.

> **IX.  Consorcio offers other grounds for vacating the Arbitral Award that fall under Chapter 1 of the Federal Arbitration Act or 9 U.S.C., §§ 1-16, specifically under 9 U.S.C. §§ 10-12.**

Consorcio alleges that under certain provisions of Chapter 1 of the FAA, the Final Arbitral Award should be vacated. Consorcio contests that under 9 U.S.C. §§ 10 (a)(1), 10 (a)(2), 10(a)(3), and 10(a)(4), the Arbitral Tribunal misapplied the law in issuing its Arbitral Award; it was bias in its findings; it reached the Arbitral Award through undue means and should have postponed the evidentiary hearing. These final grounds to vacate the Arbitral Award are the weakest of them all because as this Court already found in Case No. 02-23249-CIV-MOORE, even if these grounds could be proven, Chapter 1 of the FAA does not apply to the enforceability of an Arbitral Award pursuant to *Industrial Risk Insurers*, 141 F.3d 1434. In

CASE NO. 04-20673-CIV-MOORE

*Industrial Risk Insurers*, the Eleventh Circuit found that an Arbitral Award can only be confirmed under Chapter 2 of the FAA, otherwise known as the New York Convention. The Court stated, "an arbitral award made in the United States, under American law, falls within the purview of the New York Convention – and is thus governed by Chapter 2 of the FAA – when one of the parties to the arbitration is domiciled or has its principal place of business outside of the United States. *Id.* at 1441. Therefore, as this Court determined in Case No. 02-23249-CIV-MOORE, Chapter 1 of the FAA would not apply to the issue of whether or not the Arbitral Award should be vacated and thus even if Consorcio's grounds were true, which Four Seasons acknowledges them not to be, they would still present no genuine issue of material fact.

## CONCLUSION

For the foregoing reasons, Four Seasons' Motion for Summary Judgment, or in the Alternative, for Judgment on the Pleadings should be granted.

Dated: October ___, 2004.

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by mail to Joseph Matthews, Esq. and Enid Duany Mendoza, Esq., COLSON HICKS EIDSON, 255 Aragon Avenue, Second Floor, Coral Gables, FL 33134, this ___ day of October, 2004.

Respectfully submitted,

RODRIGUEZ & MACHADO, P.A.

Juan J. Rodriguez
   Florida Bar No. 613843
Alberto J. Xiques
   Florida Bar No. 948217
101 Madeira Avenue
Coral Gables, FL 33134
(305) 377-1000 (telephone)
(305) 377-1055 (facsimile)
axiques@rodriguezmachado.com

**COUNSEL FOR FOUR SEASONS**