UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

Case No. 04-20673-CIV-MOORE/SIMONTON

FOUR SEASONS HOTELS
AND RESORTS B.V., et al.,

    Plaintiffs/Petitioners,

vs.

CONSORCIO BARR, S.A.,

    Defendant/Respondent.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Plaintiffs' Motion for Summary Judgment (dkt # 67).

UPON CONSIDERATION of the Motion, the Responses, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

## I.  BACKGROUND

This is an action by Petitioners[1] ("Four Seasons") to confirm an arbitration award against Respondent Consorcio Barr S.A. ("Consorcio") for claims arising under certain agreements between the Parties concerning the management and operation of the Four Seasons Hotel Caracas (the "Hotel") in Caracas, Venezuela.[2] In a previous action before this Court, Four Seasons sought to

---

[1] Petitioner are Four Seasons Hotels and Resorts, B.V., a Dutch corporation ("Four Seasons Netherlands"); Petitioner Four Seasons Hotels Limited, a Canadian corporation ("Four Seasons Canada"); Petitioner Four Seasons Caracas, C.A., a Venezuelan corporation ("Four Seasons Venezuela") (collectively, "Four Seasons").

[2] The Agreements include: (1) the Hotel Management Agreement (dkt # 1-2, Ex. A); (2) the Hotel Advisory Agreement (dkt # 1-2, Ex. B); (3) the Hotel Services Agreement (dkt # 1-2, Ex. C); (4) the Hotel Pre-opening Service Agreement (dkt # 1-2, Ex. D); and (5) the Loan Agreement (dkt # 79).

confirm a Partial Arbitration Award. Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A., 267 F. Supp. 2d 1335 (S.D. Fla. 2003). The Partial Arbitration Award, issued October 10, 2002, ruled (1) that United States procedural law and Venezuelan substantive law applied; (2) that the Arbitral Tribunal possessed jurisdiction to decide whether the issues were subject to arbitration; (3) that the issues were in fact arbitrable; and (4) that Consorcio was enjoined from pursuing parallel litigation in Venezuela for claims arising out of the agreements in question. Id. at 1338. On November 15, 2002, notwithstanding the Partial Arbitration Award, Consorcio moved for a preliminary injunction against enforcement of the award in the Tenth Superior Court for Civil, Commercial and Traffic Matters in and for the Judicial District of the Metropolitan Area of Caracas, Venezuela. Id. On December 2, 2002, the Venezuelan court granted Consorcio's motion to suspend execution of the Partial Arbitration Award. Id. On March 21, 2003, the same court declared the Partial Arbitration Award null and void. Id.

On November 15, 2002, Four Seasons brought an action before this Court seeking confirmation of the Partial Arbitration Award and to enjoin Consorcio from any further proceedings before the Venezuelan court. See Motion to Confirm and Enforce Arbitral Award, Case No. 02-23249-CIV-MOORE (dkt # 1). Consorcio opposed confirmation of the award for various reasons, each of which this Court rejected.[3] This Court also found that Consorcio's participation in the

---

[3] The reasons proffered by Consorcio supporting its defense included: (1) the arbitration agreement is invalid under Venezuelan law and confirmation should therefore be denied under article V(1)(a) of the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, also known as the New York Convention (the "Convention"); (2) this Court previously found that the Venezuelan courts ruled the arbitration agreement invalid under Venezuelan law and confirmation is therefore barred under the doctrine of collateral estoppel; (3) the Tribunal's award has been suspended by a Venezuelan court and confirmation should therefore be denied under article V(1)(e) of the Convention; (4) Consorcio's application to a Venezuelan court to set aside or suspend the award allows this Court to adjourn its decision on confirmation of the award under article VI of the Convention; (5) the Court lacks personal jurisdiction over Consorcio; and (6) venue is improper.

arbitration proceeding constituted a waiver of its ability to argue that this Court should deny confirmation of the Partial Arbitration Award because of the Venezuelan court's finding that the arbitration proceedings were invalid. Four Seasons, 267 F. Supp. 2d at 1343. On appeal, the Eleventh Circuit Court of Appeals found that participation in the arbitration proceedings did not constitute a waiver, and remanded the matter for the district court to consider whether the Venezuelan court's ruling warranted non-confirmation of the Partial Arbitration Award. Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A., 377 F.3d 1164, 1171-72 (11th Cir. 2004). On remand, this Court concluded that the Venezuelan court's ruling did not warrant non-confirmation of the Partial Arbitration Award. Order on Remand, dated September 23, 2005, Case No. 02-23249 (dkt # 157), *aff'd* Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A., 533 F.3d 1349 (11th Cir. 2008).

On March 22, 2004, the International Centre for Dispute Resolution (the "ICDR") of the American Arbitration Association (the "AAA") issued the Arbitral Tribunal's Award to the Parties (the "Final Award").[4] Final Award (dkt # 1-2 at 332-403). The Final Award granted the relief requested by Four Seasons, including: (1) a finding that Consorcio breached the agreements at issue; (2) requiring Consorcio to specifically perform its obligations under the agreements at issue; (3) enjoining Consorcio from interfering directly or indirectly with the management of the Hotel while the agreements at issue are in effect; (4) awarding Four Seasons $8,166,100 in damanges, plus pre-

---

[4] Approximately two weeks prior to the final evidentiary hearing, Consorcio notified the Arbitral Tribunal that it would no longer participate in the arbitration. On September 21, 2003, the day prior to the final evidentiary hearing, Consorcio's party-appointed arbitrator, Emilio Pittier ("Pittier"), notified the other arbitrators he would not attend the final evidentiary hearing. Consorcio declined to appoint a replacement and the Arbitral Panel appointed Jose Maria Abascal, Esq. ("Abascal") as a member of the Arbitral Tribunal.

award and post-award interest; and (5) taxation of the arbitrator's fees and administrative fees in the amount of $253,635.43.

Four Seasons now seeks an order confirming the Final Award. Consorcio argues that the Final Award should not be confirmed because: (1) the Final Award grants damages beyond the scope of the submission to arbitration, in violation of Article V(1)(c) of the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, also known as the New York Convention (the "Convention"); (2) the award of specific performance is a matter beyond the scope of the submission to arbitration, in violation of Article V(1)(c) of the Convention; (3) Consorcio was unable to fairly present its case to the Arbitral Tribunal because participation would constitute a waiver of Consorcio's challenge to the Arbitral Tribunal's jurisdiction, in violation of Article V(1)(b) of the Convention; and (4) enforcement of the specific performance portion of the Final Award will require this Court to supervise an ongoing foreign business operation, in violation of Article V(2)(b) of the Convention.

## II.  STANDARD OF REVIEW

A district court's "'review of a foreign arbitration award is quite circumscribed.'" China Nat'l Metal Products Import/Export Co., 379 F.3d 796, 799 (9th Cir. 2004) (quoting Ministry of Defense of the Islamic Republic of Iran v. Gould, Inc., 969 F.2d 764, 770 (9th Cir. 1992)). "The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."[5] 9 U.S.C. § 207. Article V of the Convention states, in relevant part:

---

[5] The Convention referred to is the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, also known as the New York Convention. 21 U.S.T. 2517.

> 1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:
>
> (a) The parties to the agreement . . . were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or
> (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or
> (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or
> (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or
> (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.
>
> 2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:
> (a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or
> (b) The recognition or enforcement of the award would be contrary to the public policy of that country.

Convention art. V(1)(a)-(2), 21 U.S.T. 2517. "'[T]here is a general pro-enforcement bias' manifested in the Convention." Four Seasons, 267 F. Supp. 2d at 1343 (quoting Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier (RAKTA), 508 F.2d 969, 973 (2d Cir. 1974)), *overruled on other grounds by* Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A., 377 F.3d 1164 (11th Cir. 2004). "[T]he party opposing confirmation bears the burden of

proving the applicability of the Convention's enumerated defenses." Id. (citing Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte, 141 F.3d 1434, 1442 (11th Cir. 1998).

### III. ANALYSIS

#### A. Confirmation of Claims Under the Loan Agreement

Consorcio argues that the portion of the Final Award based on damages for claims under the Loan Agreement (dkt # 79) dated May 19, 2000, should not be confirmed because claims under the Loan Agreement were not arbitrable. A court may decline to confirm an arbitration award if "[t]he award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration." Convention art. V(1)(c).

The Loan Agreement governs Consorcio's access to a credit facility from Four Seasons for the purpose of repaying outstanding Senior Debt principal or funding costs and expenses necessary to complete construction of the Hotel. Loan Agreement, § 2.1-2.2. Consorcio's access to a credit facility was originally governed by § 8.03 of the Hotel Management Agreement, dated April 9, 1997 (dkt # 1-2, Ex. A). The Hotel Management Agreement contained an arbitration provision. Hotel Management Agreement, § 19.03. However, the Loan Agreement, which explicitly superseded § 8.03 of the Hotel Management Agreement, contained no arbitration provision.

In the Final Award, the Arbitral Tribunal found that it had jurisdiction to hear and decide claims under the Loan Agreement. Final Award, ¶ 219. The Arbitral Tribunal concluded that the Loan Agreement was a modification of § 8.03 of the Management Agreement, and that as such, the Loan Agreement was an ancillary agreement to the Hotel Management Agreement "since its only aim is to facilitate or make possible the compliance by the Owner of its obligations covenanted in

each of the Contracts to cause the construction, furnishing and equipping of the Hotel as a World Class Luxury Hotel." Id. at ¶ 220. The Arbitral Tribunal also found that the interrelationship between provisions in the Loan Agreement and the Hotel Management Agreement supported the ancillary nature of the Loan Agreement. Id. at ¶ 221. Based on these findings, the Arbitral Tribunal concluded that the Loan Agreement "is a part of the one and single contractual structure including the Contracts and the Loan Agreement, the main purpose of which was to transform the Hotel into, and operate it as, a World Class Luxury Hotel." Id. at ¶ 222.

As an initial matter, the mere fact that two separate contracts have as their purpose the same ultimate objective is insufficient to impute the arbitration provision in one contract to the other, where the second contract lacks an arbitration provision. The importance of a written arbitration provision in a contract is evidenced in both Chapter 1 of the Federal Arbitration Act (the "FAA")[6] and in Chapter 2 of the FAA's incorporation of the New York Convention. Article II of the Convention provides, in relevant part:

> (1) Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.

---

[6] Section 2 of the FAA states:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract.

9 U.S.C. § 2.

7

> (2) The term "agreement in writing" shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams.

Convention, art. II(1), (2). Thus, the presence of an arbitration provision in writing is a prerequisite to an action to confirm an arbitration award. Czarina, L.L.C. v. W.F. Poe Syndicate, 358 F.3d 1286, 1292 (11th Cir. 2004). "Where a party has failed to satisfy the agreement-in-writing prerequisite, courts have dismissed the action for lack of jurisdiction." Id. (citing cases).

The Arbitral Tribunal's finding that the Loan Agreement was a modification of § 8.03 of the Hotel Management Agreement was descriptively accurate, inasmuch as the Loan Agreement replaced § 8.03 as the agreement governing Consorcio's access to a credit facility from Four Seasons. However, the fact that § 8.03 was superseded by a new and separate agreement does not mean that the Loan Agreement is effectively the new § 8.03 of the Hotel Management Agreement. Were that intended to be the case, the parties could have simply entered into a revised Hotel Management Agreement with the terms of the Loan Agreement replacing the terms found in § 8.03.

Instead, the Parties entered into a separate agreement, the Loan Agreement, which explicitly states that "[t]his Agreement and the Related Agreements constitute the entire agreement between the Parties with respect to the subject matter hereof . . . and supersede all prior agreements . . . of the parties with respect to the subject matter hereof . . . including the provisions of section 8.03 of the Hotel Management Agreement."[7] Loan Agreement, § 1.5. By its plain language, this provision severs the Loan Agreement from the Hotel Management Agreement and proscribes a finding that the arbitration clause of the Hotel Management Agreement is incorporated into the Loan Agreement or

---

[7] "'Related Agreements' means the Promissory Note and the Mortgage." Loan Agreement, Schedule A, at 5.

8

otherwise applies to the Loan Agreement. Therefore, despite any similarity of purpose of the Loan Agreement and the Hotel Management Agreement and any affect provisions of the Hotel Management Agreement may have on the credit facility governed by the Loan Agreement, the Loan Agreement is a separate agreement that stands apart from the Hotel Management Agreement. Therefore, the absence of an arbitration provision in the Loan Agreement deprives this Court of jurisdiction to confirm the Final Award, inasmuch as it awards damages for claims under the Loan Agreement.

B.   Propriety of Specific Performance as a Remedy

Consorcio challenges the propriety of specific performance as a remedy granted by the Final Award on the ground that it is contrary to Venezuelan law and that the specific performance portion of the Final Award should not be confirmed pursuant to Article V(1)(c). A holding in an arbitration award that is contrary to the substantive law governing the arbitration is not a defense under the Convention, and therefore a district court generally may not review an arbitration award on the merits. China Nat'l Metal Products, 379 F.3d at 799 (citing Banco de Seguros del Estado v. Mut. Marine Office, Inc., 344 F.3d 255, 260 (2d Cir. 2003)). Therefore, Consorcio has not met its burden of proving the applicability of one of the Convention's enumerated defenses with respect to the propriety of specific performance as a remedy.

C.   Consorcio's Refusal to Participate in the Arbitral Panel's Final Evidentiary Hearing

Consorcio asserts that it refused to participate in the final evidentiary hearing to preserve its right to challenge the Arbitral Tribunal's jurisdiction and the anti-suit injunction, and that Consorcio is entitled to a defense under Article V(1)(b) of the Convention. Article V(1)(b) provides a defense against confirmation where "[t]he party against whom the award is invoked was not given proper

9

notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case." Consorcio discontinued its participation in the arbitration proceeding just prior to the final evidentiary hearing and removed its selected arbitrator from the Arbitral Tribunal in September of 2003. In June of 2003, prior to Consorcio's withdrawal, this Court issued an Order Confirming the Partial Award. Four Seasons, 267 F. Supp. 2d at 1335. In the Order Confirming the Partial Award, this Court found that Consorcio's participation in the arbitration proceeding constituted a waiver of its ability to argue that the Venezuelan court's finding that the arbitration proceedings were invalid was an adequate basis for denying confirmation of the Partial Arbitration Award under the Convention. Id. at 1343. This finding was reversed by the Court of Appeals in July of 2004. Four Seasons, 377 F.3d at 1171-72.

The question, then, is whether this Court's finding that Consorcio's participation in the arbitration proceeding leading to the Partial Arbitration Award constituted a waiver was grounds for Consorcio to withdraw from the final evidentiary hearing in order to preserve its right to challenge the Arbitral Tribunal's jurisdiction and the anti-suit injunction on appeal. In fact, Consorcio's withdrawal from the arbitration proceeding after this Court issued its Order Confirming the Partial Award was unnecessary to preserve its rights on appeal and the Court of Appeals did not rely on Consorcio's withdrawal in reaching its conclusions. Just as the Court of Appeals declined to consider a number of Consorcio's arguments that Consorcio did not raise before this Court, the Court of Appeals did not rely on any of Consorcio's actions taken after this Court issued its Order in June of 2003, nor did such actions constitute matters properly within the scope of Consorcio's appeal.

Moreover, regardless of the decision ultimately reached by the Court of Appeals concerning the waiver issue in the previous action to confirm the Partial Arbitration Award, the issue of the

Arbitral Tribunal's jurisdiction and the propriety of the anti-suit injunction was to be conclusively decided one way or the other in the action to confirm the Partial Arbitration Award. With the jurisdictional and anti-suit injunction issues thus decided, Consorcio's withdrawal from the final evidentiary hearing, the proceeding governing the issuance of the Final Award, in an attempt to preserve its right to contest jurisdiction, was futile. Consorcio's withdrawal was thus ineffective to preserve its right to contest jurisdiction or the anti-suit injunction in the appeal of the Partial Arbitration Award or in this action to confirm the Final Award.

Given that Consorcio's withdrawal from the arbitration proceeding was unnecessary to preserve its rights, Consorcio was not precluded from or unable to present its case. Even if Consorcio's decision to withdraw from the proceeding was taken based on a good faith subjective belief that such action was necessary to preserve its rights on appeal, such a misgiving did not render Consorcio unable to present its case within the meaning of ArticleV(1)(b). Therefore, Consorcio has not met its burden of proving that Article V(1)(b) applies as a defense.[8]

D.  Public Policy Considerations

Consorcio contends that confirmation of the Final Award is contrary to public policy because it would require this Court to supervise the operation of the Hotel, which Consorcio suggests would be an impractical or impossible task, and would also be in contravention of rulings by other Venezuelan courts and contrary to comity considerations. Article V(2)(b) provides that a court may refuse to confirm an arbitration award where "[t]he recognition or enforcement of the award would be contrary to the public policy of that country." As an initial matter, consideration of these public

---

[8] Consorcio received proper notice of the arbitration proceeding and of the appointment of Abascal to replace Pittier in the Arbitral Tribunal. Final Award, ¶¶ 24-25, 27.

policy concerns is not barred by the district or appellate court holdings in the action to confirm the Partial Arbitration Award because no prior rulings addressed the public policy concerns raised here. "Under the Convention, 'the country in which, or under the [arbitration] law of which, [an] award was made' is said to have primary jurisdiction over the arbitration award." Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 364 F.3d 274, 287 (5th Cir. 2004) (quoting Yusef Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc., 126 F.3d 15, 23 (2d Cir 1997)). "All other signatory states are secondary jurisdictions, in which parties can only contest whether that state should enforce the arbitral award." Id.

Consorcio's assertion that the Final Award's potential to conflict with the rulings of other Venezuelan courts is of no moment here. The Partial Arbitration Award's anti-suit injunction, which was confirmed by this Court, barred Consorcio from seeking relief in Venezuelan courts for claims arising out of the agreements at issue. Consorcio has stated that confirmation "will conflict directly with decisions of the Venezuelan courts regarding this very Hotel." Resp't's Resp. in Opp'n to Pet.'s Mot. for Summ. J., at 16-17 (dkt # 73). Consorcio does not elaborate on the subject matter of these rulings nor explain the nature of the alleged conflict. It is therefore unclear if the Venezuelan court rulings to which Consorcio refers arise out of the agreements at issue here. If so, the Final Award takes precedence because the foreign ruling violates the anti-suit injunction. If the Venezuelan court rulings are not covered by the anti-suit injunction, then the potential for conflict must be considered when and if an enforcement action arises. However, this Court finds that under these circumstances, and given the lack of specificity provided concerning the alleged conflicts with foreign court rulings, the possibility that confirmation of the Final Award may result in conflict with a foreign court's valid ruling is insufficient to raise comity or other public policy concerns sufficient

to give rise to a defense under Article V(2)(b).

In any event, Four Seasons has indicated that it would be inclined to bring an enforcement action in Venezuela, a secondary jurisdiction. Pet.'s Reply in Support of Mot. for Summ. J., at 11 (dkt # 76). However, even if an enforcement action were brought before this Court, there is no reason to believe that this Court would be unable to assess the claims and resolve them accordingly, without going so far as to supervise the day to day operations of the Hotel. Therefore, Consorcio has failed to meet its burden of proving that confirmation of the Final Award entitles it to a defense under Article V(2)(b).

## IV. CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendants' Motion for Summary Judgment (dkt # 85) is GRANTED IN PART and DENIED IN PART. Confirmation of the Final Award with respect to damages for claims under the Loan Agreement is DENIED. The Final Award is CONFIRMED in all other respects. The Clerk of the Court is instructed to CLOSE this case. All pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this /2th day of May, 2009.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:   All counsel of record